**No. 2023-2213**

---

*In the*

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

# CLAIMANT-APPELLANT'S PRINCIPAL BRIEF

*Re*

---

**DANIEL R. SMITH,**

Claimant-Appellant,

*versus*

**DENIS MCDONOUGH,**
Secretary of Veterans Affairs,

Respondent-Appellee.

---

**ON APPEAL FROM THE**
**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**
**IN VET. APP. NO. 21-3246, CHIEF JUDGE MARGARET BARTLEY**

---

**KENNETH M. CARPENTER**
Carpenter, Chartered
1525 Southwest Topeka Boulevard
Post Office Box 2099
Topeka, Kansas 66601
785-357-5251

Attorney for Claimant-Appellant

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SMITH V. DVA, 23-2213

**Certificate of Interest**

Counsel for the Claimant-Appellant certifies the following information is accurate and complete to the best of my knowledge:

1. **Represented Entities. Fed. Cir. R. 47.4(a)(1).**

   The full name of all entities represented by undersigned counsel in this case:

   Daniel R. Smith.

2. **Real Party in Interest. Fed. Cir. R. 47.4(a)(2).**

   Full names of all real parties in interest for the entities. (Do not list the real parties if they are the same as the entities):

   Same.

3. **Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3).**

   Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more of stock in the entities:

   None.

4. **Legal Representatives. Fed. Cir. R. 47.4(a)(4).**

   List all law firms, partners and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this Court for the entities. (Do not include those who have already entered an appearance in this

court):

None.

5. **Related Cases. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).**

The case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

None.

6. **Organizational Victims and Bankruptcy Cases. Fed. Cir. R. 47.4(a)(6).**

Any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1( c) (bankruptcy case debtors and trustees):

None.

Date: November 17, 2023

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

## Table of Contents

**Page**

Certificate of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Statement of Subject-Matter and Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A. Nature of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Statement of Facts, Course of Proceedings and Disposition Below. . . . 2

Summary of the Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. The Veterans Court erred as a matter of law in its determination that the evidentiary burden to rebut the second prong of presumption of soundness pursuant to 38 U.S.C. § 1111 had been met. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Addendum - Memorandum Decision of the Veterans Court. . . . . . . . . . . . . . . . . . . 17

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# Table of Authorities

**Page**

## Decisions

*Akins v. Derwinski*, 1 Vet. App. 228 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Amin v. Merit Systems. Protection Board*, 951 F.2d 1247 (Fed. Cir. 1991). . . . . . . . . . . . 13

*Boggs v Peake*, 520 F.3d 1330 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Forshey v. Principi*, 284 F.3d 1335 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Forshey v. Principi*, 537 U.S. 823 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Horn v. Shinseki*, 25 Vet.App. 231 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Laposky v. Brown*, 4 Vet.App. 331 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lynch v. McDonough*, 21 F.4th 776 (Fed. Cir. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Prenzler v. Derwinski*, 928 F.2d 392 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Quirin v. Shinseki*, 22 Vet.App. 390 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Vanerson v. West*, 12 Vet.App. 254 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## Statutes

38 U.S.C. § 1111.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9, 15

38 U.S.C. § 7292(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

38 U.S.C. § 7292(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

38 U.S.C. §7292(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

38 U.S.C. §7292(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Other

https://my.clevelandclinic.org/health/diseases/15246 -macular-degeneration (last visited November 20, 2023) .......... 4

https://www.aao.org/eye-health/diseases/what-is-retinitis-pigmentosa (last visited November 20, 2023) .......... 4

## Statement of Related Cases

Pursuant to Fed. Cir. R. 47.5, the undersigned counsel states that no other appeal has been taken in this case in or from the United States Court of Appeals for Veterans Claims before this Court or any other appellate court.

Undersigned counsel further states that he is unaware of any cases pending before this Court which would directly affect this Court's decision in this appeal.

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

## Statement of Subject-Matter and Appellate Jurisdiction

On October 31, 2022, the United States Court of Appeals for Veterans Claims ("Veterans Court") issued a single-judge memorandum decision that affirmed the decision of the Board of Veterans' Appeals ("Board") dated January 14, 2021. On November 21, 2022, Mr. Smith filed a motion for reconsideration by the single judge. On April 20, 2023, the Veterans Court granted Mr. Smith's motion for single-judge reconsideration and withdrew the October 31, 2021 memorandum decision. The single judge then issued a new decision in its stead to again affirm the Board's January 14, 2021 Board decision, which had denied Mr. Smith entitlement to service connection for retinitis pigmentosa ("RP"). On July 7, 2023, Mr. Smith timely appealed the Veterans Court's April 20, 2023 decision to this Court. This Court has jurisdiction to review this decision pursuant to 38 U.S.C. §§ 7292(a), (c). The issues on appeal are entirely issues of law. The Veterans Court decision appealed from is final.

## Statement of the Issue

Whether the Veterans Court erred as a matter of law
in is determination that the Board's evidentiary burden to rebut
the second prong of presumption of soundness had been met?

## Statement of the Case

### A. Nature of the Case.

This appeal requires a *de novo* review by this Court of the Veterans Court's legal determination that there was "clear and unmistakable evidence" that Mr. Smith's RP was not aggravated during his period of active military service.

### B. Statement of the Facts, Course of Proceedings and Disposition Below.

Mr. Smith served honorably on active duty in the Army from August 12, 1964 to July 20, 1965. Appx165.[1] He served eleven months before his impaired vision required that he be discharged due to his physical disability. *Id.* Mr. Smith's service entrance examination did not note any pre-existing eye condition. Appx168-169. Mr. Smith's June 11, 1965 discharge examination, Appx170-171, did note at the time of separation he suffered from "retinal degeneration, bilateral." Appx170. In March 1966 Mr. Smith filed a claim for compensation for his eye disability, which the VA denied in a May 19, 1966. Appx167.

The 1966 rating decision found that Mr. Smith's induction examination showed visual acuity in his right eye measured at 20/400, but correctable to 20/40, and his left eye measured at 20/400, but correctable to 20/50. *Id.* This rating decision also noted that Mr. Smith had appeared before an Army Physical Evaluation Board ("PEB"), which

[1] References to the Joint Appendix to be filed by the Appellant with his reply brief are cited as "Appx___ ."

found him unfit for further service, and therefore he was separated based on "his eye disability diagnosed degeneration retina, hereditary, remedial with corrected vision 20/40 [sic] bil[ateral]." *Id.* The rating decision noted further that the PEB found this condition was not "incurred in the line of duty" [i.e., "ILOD"] and "existed prior to entry" [i.e., "EPTE"] into service. *Id.* The rating decision reasoned that the "manifestation [of this disability] in service reflects no acceleration [sic] and [is] considered due to the inherent trait of [Mr. Smith's] hereditary remedial entity [sic]" and that no "agg[ravation] in service is shown." *Id.* Lastly, the1966 rating decision concluded that Mr. Smith's RP condition was a "[c]onstitutional or developmental abnormality—not a disability under the law." *Id.*

The VA notified Mr. Smith of this adverse rating decision in correspondence dated May 27, 1966. Appx166. The notice informed him that his disability—which VA characterized as "[d]egeneration of retina"—was "hereditary, remedial, does not constitute a disease or injury within the meaning of present law, and therefor it is not compensable." *Id.* Mr. Smith did not appeal this 1966 rating decision.

On January 14, 1980, Mr. Smith submitted a claim to VA for a non-service-connected ("NSC") pension based on his bilateral eye disease. Appx161-164. In support of this claim Mr. Smith submitted the report of an August 1979 VA eye examination. Appx160. The examining physician diagnosed bilateral macular degeneration and defective vision of the right and left eye (1/400) due to macular degeneration and

indicated that a visual field was not obtained because the patient could not visualize a target. *Id.* In March 1980 the VA awarded Mr. Smith a NSC pension and aid and attendance ("A&A") benefits, effective from November 13, 1979. Appx159. These benefits were awarded based on the VA's finding that Mr. Smith's disability was permanent and defined as "100% macular degeneration with visual acuity 1/400 bilateral, uncorrectable." *Id.* Based on the severity of his disability he was awarded special monthly compensation ("SMC") "on account of [his] need for regular aid and attendance." *Id.* The basis for VA's award of NSC pension and A&A benefits was for a disability identified as bilateral macular degeneration[2], the same disability for which Mr. Smith claimed service-connected compensation in March 1966 but was denied by VA in its 1966 rating decision.

On April 8, 1996 Mr. Smith applied for compensation for blindness due to **RP**[3] in addition to macular degeneration. Appx155-158. On May 21, 1996 VA informed Mr. Smith that the evidence he submitted was not new and material and it denied re-opening

---

2 Macular degeneration is primarily an age-related retinal condition. There are two types of macular degeneration—wet and dry. You may lose central vision, but you are not likely to lose all of your vision. There are treatments, but there isn't a cure. *See* https://my.clevelandclinic.org/health/diseases/15246 -macular-degeneration (last visited November 20, 2023).

3 Retinitis pigmentosa ("RP") is a group of eye problems that affect the retina. This condition changes how the retina responds to light, making it hard to see. *See* https://www.aao.org/eye-health/diseases/what-is-retinitis-pigmentosa (last visited November 20, 2023).

his prior claim for compensation. Appx152. Attached to the VA's notice letter was a copy of the May 6, 1996, rating decision that likewise had denied re-opening because the evidence Mr. Smith submitted at that time was also found to be not sufficiently new and material to re-open his claim for a vision disability. Appx153-154.

Mr. Smith appealed the VA's denial of reopening his eye disability claim, which was continuously prosecuted until June 15, 2010, when this Court issued a decision that remanded the matter to the Board. Appx142-151. The remand instructed the Board to determine whether there were different factual bases for Mr. Smith's 1996 claim from his original 1966 claim for service connection. *Id.* The Court's remand instructions included that the Board was to consider the issue of service connection for Mr. Smith's eye disability in light of the Federal Circuit's decision in *Boggs v Peake*, 520 F.3d 1330 (Fed. Cir. 2008), and whether this precedent had an effect on Mr. Smith's 1973 and 1996 claims. Appx150.

On April 1, 2011, the Board issued a decision, Appx118-141, which determined that Mr. Smith's April 1996 claim presented a new factual basis and remanded for adjudication of that claim by the agency of original jurisdiction in the first instance. Appx121 and Appx136. On November 29, 2012, VA issued a rating decision denying Mr. Smith service connection for his RP disability. Appx100-102. On October 30, 2013, Mr. Smith filed a notice of disagreement ("NOD") to initiate his appeal, Appx89-99, and on July 22, 2016 he perfected his appeal by filing a VA Form 9, Appx75, along with

argument in support of it. Appx76-88. On September 11, 2018, the Board issued its decision denying Mr. Smith service connection for his RP disability. Appx63-74. Mr. Smith appealed again to the Veterans Court.

On May 29, 2020, the Veterans Court issued a memorandum decision which determined that the Board's September 2018 decision was erroneous because it had failed to provide an adequate statement of its reasons or bases for its decision to deny Mr. Smith's claim. Appx49-57. In particular, the Veterans Court found that the Board had not adequately explained its determination that clear and unmistakable evidence existed to rebut the aggravation prong of the presumption of soundness. Appx55-56. The Veterans Court then set the Board's decision aside and remanded the case for readjudication. Appx56-57.

On remand before the Board Mr. Smith submitted additional argument in support of his RP disability service-connection claim on November 24, 2020. Appx58-62. On January 14, 2021, the Board once again denied it. Appx32-48. Mr. Smith in turn again appealed to the Veterans Court.

On October 31, 2022, the Veterans Court issued its single-judge memorandum decision that affirmed the Board's January 2021 decision. Appx1-7. On November 21, 2022, Mr. Smith filed his motion for reconsideration by the single judge. Appx8-13. On April 20, 2023, the Veterans Court granted Mr. Smith's motion for single-judge reconsideration by withdrawing its October 31, 2021 memorandum decision, but then

it issued a new decision in its stead that again affirmed the Board's January 14, 2021 decision that denied Mr. Smith entitlement to service connection for his RP disability. Appx14-20. On July 7, 2023, Mr. Smith timely appealed the Veterans Court's decision to this Court. Appx22.

## Summary of the Arguments

This appeal turns on whether the medical opinion of Dr. Wilson dated May 11, 2012 constituted the required "clear and unmistakable evidence" to rebut the second prong of the presumption of soundness pursuant to 38 U.S.C. § 1111. This appeal asks that this Court undertake a non-deferential review of the legal determination made by the Veterans Court that there was "clear and unmistakable evidence" that Mr. Smith's RP had not been aggravated during his period of active duty service. Mr. Smith will demonstrate that Dr. Wilson's opinion evidence was not "clear and unmistakable evidence" and therefore, as a matter of law, was legally insufficient to rebut the second prong of the presumption of soundness. As such, the decision of the Veterans Court must be reversed as a matter of law.

## Arguments

### I.

### Standard of Review.

This Court may decide all relevant questions of law in an appeal from a decision by the Veterans Court. 38 U.S.C. §7292(d)(1). This Court reviews legal determinations

of the Veterans Court *de novo*. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991). This Court reviews legal determinations of the Veterans Court *de novo*. *Lynch v. McDonough*, 21 F.4th 776, 779 (Fed. Cir. 2021). In doing so, this Court may "affirm or if the decision of the Court of Appeals for Veterans Claims is not in accordance with law, . . . modify or reverse the decision of the Court of Appeals for Veterans Claims or . . . remand the matter as appropriate." 38 U.S.C. §7292(e)(1).

**II.**

**The Veterans Court erred as a matter of law in its determination that the evidentiary burden to rebut the second prong of presumption of soundness pursuant to 38 U.S.C. § 1111 had been met.**

In this matter it is not disputed that Mr. Smith's entrance examination to service, Appx168-169, did not note that he had a preexisting eye condition. It also is not in dispute that Mr. Smith's June 11, 1965 separation examination, Appx170-171, noted that at discharge he had been diagnosed with "retinal degeneration, bilateral". Appx170. Further, it is not in dispute that Medical Board Proceedings, Appx172-175, were initiated after it was discovered that Mr. Smith had what was diagnosed as a degeneration of the retina which was "unchanged", "incapacitating" and "non-stabilized". Appx172. Because of this condition he was found to be medically unfit "for further military service in accordance with then current medical fitness standards." *Id.* The attached clinical abstract, Appx175, shows that the Army Medical Board recommended that Mr. Smith be separated from active duty.

As a result of these indisputable facts, Mr. Smith was entitled to the benefit of the statutory presumption of sound condition upon entrance to service under the provisions of 38 U.S.C. § 1111. This Court's decision in *Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004), held that in view of the legislative history and the language of § 1111, in order to rebut this presumption of soundness, the government must show by "clear and unmistakable evidence" **both** a preexisting condition and a lack of in-service aggravation. In *Wagner*, this Court explained:

> The effect of section 1111 on claims for service-connected disability thus may be summarized as follows. When no preexisting condition is noted upon entry into service, the veteran is presumed to have been sound upon entry. The burden then falls on the government to rebut the presumption of soundness by clear and unmistakable evidence that the veteran's disability was both preexisting and not aggravated by service. The government may show a lack of aggravation by establishing that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress of the" preexisting condition. 38 U.S.C. § 1153. If this burden is met, then the veteran is not entitled to service-connected benefits. However, if the government fails to rebut the presumption of soundness under section 1111, the veteran's claim is one for service connection. This means that no deduction for the degree of disability existing at the time of entrance will be made if a rating is awarded. *See* 38 C.F.R. § 3.322.

*Id.* In this case, the report of Mr. Smith's entrance examination shows that no preexisting condition is noted upon his entry into service. Appx168-169. In particular, the entrance examination report did not identify that Mr. Smith had a preexisting eye

disability. As such, Mr. Smith was entitled to the benefit of the statutory presumption of soundness with respect to all of his eye disability claims submitted since his separation from the Army in 1965.

As this Court observed in *Wagner*, when, as here, no preexisting condition is noted upon entry into service, the Board was required to presume Mr. Smith was physically and medically sound upon his entry into service. Furthermore, in these circumstances, it is axiomatic that the burden then falls on the government, in this case the Board, to rebut the presumption of soundness by demonstrating the existence of "clear and unmistakable evidence" that Mr. Smith's eye disability both existed prior to service and was not aggravated by service. In Mr. Smith's case, the only evidence the Board relied upon to rebut the presumption of sound condition, which the Veterans Court subsequently accepted, was the May 11, 2012 opinion prepared by Dr. Stewart Wilson. Appx115-117. Dr. Wilson's opinion was based on his April 27, 2012 examination of Mr. Smith. However, the Board's reliance on this evidence, and the Veterans Court's acceptance of it, as sufficient to rebut the presumption of soundness in Mr. Smith's case was legal error.

The Veterans Court's error in reaching its legal conclusion that Dr. Wilson's opinion report was sufficient "clear and unmistakable evidence" for the Board to rely upon to rebut the second prong of the statutory presumption of soundness is revealed in the following passage from the Veterans Court's decision:

> On *de novo* review, the Court likewise concludes that **<u>the May</u>**

> **2012 opinion rises to the level of clear and unmistakable evidence of a lack of in-service aggravation** because it is supported with a suitable medical explanation, extant medical knowledge, and discussion of the facts of record. *See Horn*, 25 Vet.App. at 242 ("The assessment whether the physician's report is supported by medical evidence that pertains to the conclusion reached . . . is a significant part of what the Court does on de novo review."). Specifically, Dr. Wilson relied on affirmative evidence that Mr. Smith's vision did not change during service, noting that he entered and left service with 20/40 vision. R. at 402-03. He explained that the slight deviation in visual acuity to 20/50 on one test was "so close as to be interchangeable and reflect the slight variability of testing situations," not a degradation of visual acuity. *Id.* Dr. Wilson also described the progressive nature of retinitis pigmentosa and pointed to the service test results to conclude that the veteran was not in service long enough to demonstrate such characteristic progression in service. R. at 403. He further noted the veteran's contention that exposure to bright sunlight in Hawaii caused his vision to worsen, but explained that, although no medical studies had addressed that question directly, other medical studies showed that reducing sunlight exposure to one eye did not slow the progression of retinitis pigmentosa as compared to the control eye. R. at 402-03. This is precisely the sort of well reasoned and well-supported opinion that cannot be misinterpreted and misunderstood; therefore, the Court concludes that it is clear and unmistakable evidence that Mr. Smith's retinitis pigmentosa was not aggravated in service. *See Horn*, 25 Vet.App. at 234; *Quirin*, 22 Vet.App. at 396.

*See* Appx5 (emphasis added). However, contrary to the legal determination made by the Veterans Court that Dr. Wilson's opinion was "clear and unmistakable evidence" that Mr. Smith's RP was not aggravated in service, as a matter of law, it was not.

Clear and unmistakable evidence means that the evidence "'cannot be misinterpreted and misunderstood, i.e., it is undebatable.'" *Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (citing *Vanerson v. West*, 12 Vet.App. 254, 258-59 (1999)). The clear-and-unmistakable-evidence standard is an "onerous" one. *Laposky v. Brown*, 4 Vet.App. 331, 334 (1993) (citing *Akins v. Derwinski*, 1 Vet. App. 228, 232 (1991)). An examination of Dr. Wilson's May 2012 opinion reveals that this evidence could be readily misinterpreted and misunderstood and therefore it was not undebatable. For example, Dr. Wilson was asked if Mr. Smith's RP "condition at least as likely as not increase[d] in severity in service." Appx116. Dr. Wilson was **not** asked whether there was "clear and unmistakable evidence" that Mr. Smith's RP increased in severity in service. He was not asked by VA to identify what evidence he considered to have been "clear and unmistakable evidence" that Mr. Smith's RP did not increase in severity in service. Neither did Dr. Wilson volunteer such an opinion.

Instead, the evidence in the form of Dr. Wilson's opinion letter was that **it was at least as likely as not** that there was no increase in the severity of Mr. Smith's RP in service. In response to this query Dr. Wilson simply expressed the view that,

> No. The veteran's condition is less likely as not increased in severity in the service. The veteran entered the service with 20/40-vision in each eye and left the service with 20/40-vision in each eye. There is no evidence of record that the severity increased. (Note: There is slight variation in the recorded best visual acuity of the left eye, i.e. 20/40- to 20/50. These values are so close as to be inter-changeable

> and reflect the slight variability of testing situations with an eye only capable of vision in the 20/40 to 20/50 range.)

*See* Appx116 (underlining in original). In so doing Dr. Wilson was not opining that he believed there was "clear and unmistakable evidence" that Mr. Smith's RP did not increase in severity in service. His reasoning for his opinion that it "less likely as not increased in severity [of his RP] in the service [sic]" was simply because, "There is no evidence of record that the severity increased." Appx116. Thus, this statement of Dr. Wilson's opinion was not "clear and unmistakable evidence" that Mr. Smith's RP increased in severity in service.

Rather, this statement of Dr. Wilson's opinion was an inference he drew based upon an absence of evidence. This Court, however, has held, "Negative evidence, actual evidence which weighs against the party, must not be equated with the absence of evidence. Rebutting a presumption requires actual proof." *Amin v. Merit Systems. Protection Board*, 951 F.2d 1247, 1254 (Fed. Cir.1991); *Forshey v. Principi*, 284 F.3d 1335, at 1363 (Fed. Cir. 2002) (*en banc*), *cert. denied,* 537 U.S. 823 (2002) (from the dissent). It follows then that expert evidence based upon the **absence** of evidence cannot, as a matter of law, rise to the level of "clear and unmistakable evidence" for the purpose of rebutting the presumption of soundness. This view is especially so here in Mr. Smith's case, where the question presented to Dr. Wilson and his answer were framed in terms of "as likely as not" and not as "clear and unmistakable evidence."

VA's next question for Dr. Wilson was, "If so, is there clear and unmistakable evidence that any increase in service was due to natural progression of the disease?" Appx117. Dr. Wilson's answer was clear, "No." His "no" answer is followed by the statement, "There is no evidence that any increase of the vision problem progressed while in the service." *Id.* This follow up statement suggests that Dr. Wilson did not understand the question. As the decision of the Veterans Court makes evident, Dr. Wilson's purported "clear and unmistakable evidence" was susceptible to being both misinterpreted and misunderstood. There could not have been "clear and unmistakable evidence" that Mr. Smith's preexisting RP—which had never been diagnosed prior to service—increased in its severity, by virtue of the fact that it had not ever been severe enough to be recognized as such and/or diagnosed as a disability prior to his service.

Accordingly, based upon the record of proceedings before the Board, there was no "clear and unmistakable evidence" that Mr. Smith's preexisting RP **<u>had not</u>** increased in severity while he was on active duty. To the contrary, the fact that Mr. Smith's preexisting RP was not recognized, treated or diagnosed as a disability **<u>prior</u>** to service substantiates that there had to have been an increase in its severity during service. Only after Mr. Smith entered service for his country on active duty was his RP recognized, diagnosed and found to disqualify him from further military service. Moreover, with respect to the question of aggravation of Mr. Smith's RP while he was on active duty, the Secretary may show a lack of aggravation by establishing, with clear and unmistakable

evidence, that there was no increase in disability during service or that any "increase in disability [was] due to the natural progress" of the preexisting condition. *See Wagner*, 370 F.3d at 1096. At best, the evidence in the form of Dr. Wilson's opinion rests wholly on the notion that the record contains insufficient evidence of aggravation.

Instead, the Board may only rely on affirmative evidence to establish that there was no aggravation." *Horn v. Shinseki*, 25 Vet.App. 231, 235 (2012). Yet, the Board did the opposite by relying on Dr. Wilson's opinion despite his candid acknowledgment that,

> . . . , **<u>retinitis pigmentosa is a progressive problem</u>**, but the veteran was only in the service eleven months, apparently not long enough to demonstrate or document any progression.

*See* Appx117 (emphasis added). Thus, Dr. Wilson's opinion evidence was not, as found by the Veterans Court, "clear and unmistakable evidence of a lack of in-service aggravation." Appx5.

## Conclusion

For the foregoing reasons, the Court should reverse the decision of the Veterans Court that the Board met its evidentiary burden to rebut the second prong of the presumption of soundness pursuant to 38 U.S.C. § 1111 and instruct the Veterans Court to reverse the Board's January 14, 2021 decision which denied Mr. Smith entitlement to service connection for his RP disability.

Respectfully Submitted,

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

Attorney for Claimant-Appellant

# ADDENDUM - CAVC MEMORANDUM DECISION

*Designated for electronic publication only*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 21-3246

DANIEL R. SMITH, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before BARTLEY, *Chief Judge*.

**MEMORANDUM DECISION**

*Note: Pursuant to U.S. Vet. App. R. 30(a), this action may not be cited as precedent.*

BARTLEY, *Chief Judge*: Veteran Daniel R. Smith appeals through counsel a January 14, 2021, Board of Veterans' Appeals (Board) decision denying entitlement to service connection for retinitis pigmentosa. Record (R.) at 5-18. For the reasons that follow, the Court will affirm the January 2021 Board decision.

## I. FACTS

Mr. Smith served on active duty in the U.S. Army from August 1964 to July 1965. R. at 1989. Following service, Mr. Smith filed a claim for service connection for an eye disability and, in May 1966, a VA regional office (RO) denied service connection based on the claimed condition being a constitutional or developmental abnormality rather than a disability for VA benefits purposes. R. at 2035. The RO also noted the Physical Evaluation Board's assessment that retina degeneration was not incurred in the line of duty and existed prior to his service entrance. *Id*. In January 1980, Mr. Smith requested reopening of this claim, reporting onset of this disability in the spring of 1965 at Tripler Army Medical Center in Hawaii. R. at 1967-69. In March 1980, the RO denied the service-connection claim, but awarded special monthly pension based on the need for aid and attendance. R. at 1961.

In April 1996, Mr. Smith filed a claim for service connection for bilateral blindness due to retinitis pigmentosa. R. at 1911. In May 1996, the RO found no new and material evidence to reopen a claim for service connection for visual disability. R. at 1897. Mr. Smith appealed that rating decision and the resulting February 2008 Board decision to this Court, which issued a June 2010 memorandum decision remanding the eye disability claim. R. at 513-21; *Smith v. Shinseki* (*Smith I*), Vet. App. No. 08-1959, 2010 WL 2377056 (June 15, 2010).[1] In April 2011, the Board found that Mr. Smith's April 1996 claim for service connection for retinitis pigmentosa was a new claim, not requiring new and material evidence, and remanded the issue of service connection for retinitis pigmentosa for initial development and adjudication, including obtaining private treatment records and a VA medical examination and opinion. R. at 472-92.

In April 2012, the RO obtained a medical opinion from Dr. Stewart M. Wilson, an ophthalmologist. R. at 400. In his April 2012 examination report, Dr. Wilson reviewed the service treatment records and noted that Mr. Smith entered and left service with vision corrected to 20/40 in each eye, no color vision, poor night vision, and retinal pigmentary change. R. at 389. Dr. Wilson also noted that, at the time of the examination, Mr. Smith had no light perception in his right eye and his left eye had been enucleated. R at 390-91. Dr. Wilson diagnosed optic neuropathy, retinopathy, maculopathy, and retinitis pigmentosa, but attributed Mr. Smith's visual impairment to retinitis pigmentosa. R. at 394, 398.

In May 2012, Dr. Wilson submitted a written opinion that retinitis pigmentosa did not likely begin while Mr. Smith was in service because the condition is a genetic defect present at the time of birth, rather than an acquired trait caused by external factors. R. at 401. Dr. Wilson found no clear and unmistakable evidence that retinitis pigmentosa preexisted Mr. Smith's service, because there was no document delineating the signs and symptoms or a diagnosis of retinitis pigmentosa prior to his entrance into service. R. at 402. Nevertheless, Dr. Wilson responded that the evidence is sufficiently strong to reasonably conclude that retinitis pigmentosa did exist prior to service based on retinal pigmentary changes, reduced best visual acuity, and a complete lack of color vision 22 days following entrance. *Id.* He explained that these symptoms do not develop suddenly, that it is a "virtual certainty" that these findings preexisted service, and that later

---

[1] As the Court's June 2010 memorandum decision (*Smith I*) thoroughly outlined the relevant facts leading up to the Board's February 2008 decision, the Court need not reiterate them here; instead, the Court will focus on the facts relevant to this appeal.

examinations showed a further medical history—including poor night vision and a sister with poor vision—that supported preexistence. *Id.*

As to in-service aggravation, Dr. Wilson offered that it is less likely than not that retinitis pigmentosa increased in severity during service because Mr. Smith entered service with 20/40 vision in each eye and left service with 20/40 vision in each eye. *Id.* Dr. Wilson explained that the slight differences in the recorded best visual acuity for the left eye between 20/40 and 20/50 are so close as to be interchangeable and reflect slight variations in testing situations. *Id.* Dr. Wilson also noted Mr. Smith's argument regarding sunlight exposure in Hawaii and offered that no studies have been conducted attempting to accelerate the progression of retinitis pigmentosa, but that studies have shown that reducing light exposure to one eye does not slow the progression of retinitis pigmentosa in that eye, compared to the unprotected eye. R. at 402-03.

In November 2012, the RO denied service connection, R. at 339-41, and Mr. Smith appealed, R. at 168-81, 292-302. In September 2018, the Board denied service connection for retinitis pigmentosa, finding that this disability clearly and unmistakably existed prior to service and was not clearly and unmistakably aggravated or permanently worsened by service. R. at 149-58. Mr. Smith appealed to this Court, and, in a May 2020 memorandum decision, the Court set aside the September 2018 Board decision and remanded the matter for further adjudication. R. at 21-29. The Court found that the presumption of soundness applied because the entrance examination did not note retinitis pigmentosa, affirmed the Board's finding that retinitis pigmentosa clearly and unmistakably existed prior to service, but found inadequate reasons or bases for the Board's finding that retinitis pigmentosa clearly and unmistakably was not aggravated by service. R. at 26-29; *Smith v. Shinseki* (*Smith II*), Vet. App. No. 19-0027, 2020 WL 2781844 at *4-*5 (May 29, 2020).

In the January 2021 decision on appeal, the Board found that retinitis pigmentosa was not noted at entrance and that the veteran is thus presumed sound at entrance. R. at 7. The Board reviewed Mr. Smith's service treatment records, Dr Wilson's April 2012 examination report, and the May 2012 opinion, R. 7-11, and repeated the finding that there is clear and unmistakable evidence that Mr. Smith's visual problem preexisted his service, R. at 14-15. As to the aggravation prong, the Board found Dr. Wilson's opinion, based on his expertise as an ophthalmologist and his ultimate determination, established clearly and unmistakably that Mr. Smith's preexisting eye disability underwent no increase in severity during service. R. at 14-15, 17. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

Mr. Smith's appeal is timely, and the Court has jurisdiction to review the January 2021 Board decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Single-judge disposition is appropriate. *See Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

A veteran is presumed to be in sound condition except for defects, infirmities, or disorders noted when the veteran is examined, accepted, and enrolled for service. 38 U.S.C. § 1111; 38 C.F.R. § 3.304(b) (2022). "Therefore, when no preexisting medical condition is noted upon entry into service, a veteran is presumed to have been sound in every respect." *Horn v. Shinseki*, 25 Vet.App. 231, 234 (2012); *see Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004). In such a situation, VA bears the burden to rebut the presumption of soundness by clear and unmistakable evidence that an injury or disease manifested in service both (1) preexisted service and (2) was not aggravated in service. *Wagner*, 370 F.3d at 1096; *Horn*, 25 Vet.App. at 234.

Evidence is clear and unmistakable when it "'cannot be misinterpreted and misunderstood, i.e., it is undebatable.'" *Horn*, 25 Vet.App. at 234 (quoting *Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009)). If clear and unmistakable evidence shows that a claimant's disability was both preexisting and not aggravated by service, then the claimant is not entitled to service connection for the preexisting condition. *See id.*; *see also Wagner*, 370 F.3d at 1096. Although the Court reviews de novo the Board's determination of the adequacy of the evidence offered to rebut the presumption of soundness, *Quirin*, 22 Vet.App. at 396, the Court gives "deferential treatment to the Board's underlying factual findings and determinations of credibility," *Horn*, 25 Vet.App. at 236.

The Board must support its material determinations of fact and law with adequate reasons or bases. 38 U.S.C. § 7104(d)(1); *Pederson v. McDonald*, 27 Vet.App. 276, 286 (2015) (en banc); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for its rejection of material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

## III. ANALYSIS

Mr. Smith argues that the Board provided inadequate reasons or bases for finding that Dr. Wilson's May 2012 opinion meets the standard of clear and unmistakable evidence. Appellant's Brief (Br.) at 9. He additionally argues that the Board erred by relying on a lack of evidence in the service treatment records of increase in severity of a visual disability to find that retinitis pigmentosa clearly and unmistakably was not aggravated during active service. *Id*. at 10-11.[2] The Secretary disputes these contentions and urges the Court to affirm the January 2021 Board decision. Secretary's Br. at 6-10. He responds that Dr. Wilson's opinion is so clear and direct that it is undebatable and that the Board clearly explained this in finding no clear and unmistakable evidence that retinitis pigmentosa was aggravated in service. Secretary's Br. at 7. The Court agrees with the Secretary.

The Board noted that Dr. Wilson's May 2012 opinion used the standard of "less likely than not" in response to whether Mr. Smith's condition increased in severity during service, R. at 14, but found that the evidence cited in and the rationale of the opinion met the higher standard of clear and unmistakable evidence, stressing that the opinion left no medical basis for any finding that the veteran's preexisting visual disability increased in severity during service. R. at 14. The Board found Dr. Wilson's opinion to provide clear and unmistakable evidence, undebatable, that retinitis pigmentosa did not worsen during service. R. at 14, 15. The Board considered the veteran's lay assertion that his visual problems increased during service, but assigned those assertions no probative value due to lack of credibility based on inconsistencies with the service treatment records. R. at 15. In other words, the Board determined that the second prong of the presumption of soundness had been rebutted in this case and the Court finds the Board's explanation understandable and sufficiently detailed to facilitate judicial review; therefore, the Court concludes that the Board provided adequate reasons or bases for its finding that the second prong of the presumption of soundness was rebutted. *See Allday*, 7 Vet.App. 517, 527 (1995); *Caluza*, 7 Vet.App. at 506; *Gilbert*, 1 Vet.App. at 56-57.

Mr. Smith argues only that the Board relied on a lack of evidence of an increase in severity of a visual disability in the service treatment records, and argues that this fails to rise to the level

[2] In the May 2020 memorandum decision, this Court affirmed the Board's findings that the presumption of soundness applies to this case and that retinitis pigmentosa clearly and unmistakably existed prior to service. R. at 26-27; *Smith II*, 2020 WL 2781844 at *4-*5. These points are settled law of the case and the Court will not address them further. *See Johnson v. Brown*, 7 Vet.App. 25, 26-27 (1994).

of clear and unmistakable evidence. Appellant's Br. at 10-11. However, the Secretary correctly distinguishes this case from *Horn*, in that Mr. Smith's service treatment records affirmatively show unchanged visual acuity during service. Secretary's Br. at 9; *Horn*, 25 Vet.App. 231. The Board and Dr. Wilson each noted that Mr. Smith entered and left service with 20/40 vision and concluded that Mr. Smith had no change in vision during service. R. at 14-15, 402-03. The absence of a change in visual acuity during service is medically relevant because, according to Dr. Wilson, it demonstrated that Mr. Smith's retinitis pigmentosa was not aggravated during service. Therefore, read as a whole, Dr. Wilson's rationale was not based on the mere absence of evidence but the presence of negative medical evidence. *See Acevedo v. Shinseki*, 25 Vet.App. 286, 294 (2012) (holding that an examination report must be read as a whole). This distinction is critical because, although VA may not rely solely on the absence of evidence to rebut the presumption of soundness, because doing so would impermissibly shift the evidentiary burden, the Secretary may rely on substantive negative evidence of a lack of aggravation in service to rebut the presumption's aggravation prong. *See Horn*, 25 Vet.App. at 239-40.

Moreover, Dr. Wilson discussed the character of retinitis pigmentosa and supported his conclusion with a suitable medical explanation. *Horn* offers the guidance that a physician's post-service medical opinion may rise to the level of clear and unmistakable evidence of lack of aggravation when that opinion is supported with a suitable medical explanation, extant medical knowledge, and discussion of the facts of record. *Id.* at 243. Dr. Wilson explained that the slight differences in the recorded best visual acuity during service for the left eye between 20/40 and 20/50 are so close as to be interchangeable and reflect slight variations in testing situations. R. at 402. Dr. Wilson also noted Mr. Smith's argument regarding sunlight exposure in Hawaii and offered that studies have shown that reducing light exposure to one eye does not slow the progression of retinitis pigmentosa in that eye, compared to the unprotected eye. R. at 402-03. The Board highlighted these facets of Dr. Wilson's opinion in finding it highly probative and rising to the level of clear and unmistakable evidence. R. at 12, 14-15.

In sum, the Board provided adequate reasons or bases for its determination that Mr. Smith's preexisting eye disability clearly and unmistakably underwent no increase in severity during service. R. at 14-15, 17. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Caluza*, 7 Vet.App. at 506, *Gilbert*, 1 Vet.App. at 56-57; *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant has the burden of demonstrating error), *aff'd per curiam*, 232 F.3d 908

(Fed. Cir. 2000) (table). The Board's analysis was consistent with governing law, plausible in light of the record, and sufficiently detailed to inform Mr. Smith of the reasons for its determination that retinitis pigmentosa was not aggravated by service. Therefore, the Court will affirm the January 2021 Board decision.

## IV. CONCLUSION

Upon consideration of the foregoing, the January 14, 2021, Board decision denying entitlement to service connection for retinitis pigmentosa is AFFIRMED.

DATED: October 31, 2022

Copies to:

Kenneth M Carpenter, Esq.

VA General Counsel (027)

## Certificate of Service

I certify that on the 17th day of November, 2023, the foregoing opening brief was electronically filed through CM/ECF system with the Clerk, United States Court of Appeals for the Federal Circuit. Copies of the document were served through the Court's CM/ECF system via the Notice of Docket Activity to:

Galina I. Fomenkova, Esq.
Department of Justice
Civil Division, Commercial Litigation Branch
galina.fomenkova@usdoj.gov

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

## Certificate of Compliance

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, Appellant's counsel certifies that this Brief complies with the Court's type-volume limitation rules. This brief was printed in Garamond font at 14 points. According to the word-count calculated, using WordPerfect v.11, this Brief contains a total of 3826 words, which is within the 14,000 word limit.

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com