**Appeal No. 23-2213**

# In the United States Court of Appeals for the Federal Circuit

DANIEL R. SMITH,

*Claimant-Appellant,*

*v.*

DENIS MCDONOUGH,
Secretary of Veterans Affairs,

*Respondent-Appellee.*

**On Appeal from the United States Court of Appeals for Veterans Claims No. 21-3246, Chief Judge Margaret Bartley**

# BRIEF OF RESPONDENT-APPELLEE DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

WILLIAM J. GRIMALDI
Assistant Director

GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495

*Attorneys for the Secretary*

OF COUNSEL

DEREK SCADDEN
Deputy Chief Counsel

JONATHAN KRISCH
Attorney-Advisor
Office of General Counsel
U.S. Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC 20420

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

STATEMENT OF RELATED CASES .......... 1

JURISDICTIONAL STATEMENT .......... 2

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 2

- I. Mr. Smith's Service And Eye Disability .......... 2
- II. Relevant Procedural History Leading Up To The Veterans Court Decision At Issue .......... 3
- III. The Veterans Court Decision At Issue .......... 6

SUMMARY OF THE ARGUMENT .......... 8

ARGUMENT .......... 8

- I. Standard Of Review .......... 8
- II. Mr. Smith's Arguments Lie Beyond This Court's Jurisdiction Because They Challenge The Application Of Settled Law To His Particular Facts .......... 9

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES


*Amin v. Merit Sys. Prot. Bd.*, 951 F.2d 1247 (Fed. Cir. 1991) ........ 13

*Belcher v. West*, 214 F.3d 1335 (Fed. Cir. 2000) ........ 8, 10

*Floore v. Shinseki*, 26 Vet. App. 376 (2013) ........ 14

*Forshey v. Principi*, 284 F.3d 1335 (Fed. Cir. 2002) ........ 13

*Harris v. West*, 203 F.3d 1347 (Fed. Cir. 2000) ........ 8, 10, 11

*Johnson v. McDonough*, No. 2022-1198, 2023 U.S. App. Lexis 5373 (Fed. Cir. Mar. 7, 2023) ........ 8, 10

*Kent v. Principi*, 389 F.3d 1380 (Fed. Cir. 2004) ........ 11, 12

*Maxson v. Gober*, 230 F.3d 1330 (Fed. Cir. 2000) ........ 13

*Nieves-Rodriguez v. Peake*, 22 Vet. App. 295 (2008) ........ 14

*Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004) ........ 9

*Waltzer v. Nicholson*, 447 F.3d 1378 (Fed. Cir. 2006) ........ 10, 11, 12

*Williams v. Snyder*, 678 F. App'x 994 (Fed. Cir. 2017) ........ 14


## STATUTES


38 U.S.C. § 1111 ........ 9, 11, 12

38 U.S.C. § 7292 ........ 2, 8, 9

## STATEMENT OF RELATED CASES

No appeal from this civil action was previously before this or any other appellate court, other than the Court of Appeals for Veterans Claims from which the decision is being appealed. Counsel is not aware of any case that is currently pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal.

We note that Mr. Smith has filed two prior appeals in this Court—Case Nos. 12-7084 & 13-7092—which were both voluntarily dismissed. Although his brief references "this Court issu[ing] a decision," on June 15, 2010, Appellant's Brief (Applnt. Br.) 5, the accompanying citation makes clear that Mr. Smith means the Veterans Court instead. *See* Appx142-151.

## JURISDICTIONAL STATEMENT

The Court possesses jurisdiction to review the decision of the United States Court of Appeals for Veterans Claims (Veterans Court) pursuant to 38 U.S.C. § 7292. However, as discussed more fully below, because Mr. Smith challenges the application of law to the facts of his particular case, this court does not possess jurisdiction to entertain this appeal.

## STATEMENT OF THE ISSUES

Whether this Court has jurisdiction to review the determination made by the Board of Veterans' Appeals (board) and affirmed by the Veterans Court that clear and unmistakable evidence supports the finding that Mr. Smith's retinitis pigmentosa was not aggravated in service.

## STATEMENT OF THE CASE

### I. Mr. Smith's Service And Eye Disability

Mr. Smith served in the U.S. Army from August 1964 to July 1965. Appx49. His entrance examination showed 20/400 visual acuity in each eye, corrected to 20/40 in the right eye and 20/50 in the left, and noted that he wore glasses. Appx49; Appx169; Appx176-177. A May 1965 treatment note recorded uncorrectable visual acuity and poor night vision, noted that his sister also had a severe visual defect, and diagnosed familial retinal degeneration. Appx49.

In June 1965, a medical evaluation board found Mr. Smith not fit for

retention on active duty. Appx50; Appx174-175. The medical evaluation board observed that Mr. Smith had poor vision, including night vision, since he was six years old, that poor color vision was found at entrance into service, and also noted his positive family history. Appx50; Appx173. The medical evaluation board thus found that Mr. Smith's hereditary retinal degeneration existed prior to service and was not incurred in the line of duty. Appx50; Appx172 ("LOD: No, EPTE," *i.e.* existing prior to entry). Following the evaluation by the medical board, Mr. Smith requested to be discharged due to his physical disability. Appx178. In so doing, Mr. Smith signed a statement acknowledging that his disability was "considered to have existed prior to" service and "appear[ed] to be not incident to, or aggravated by" service. Appx178; Appx50.

Mr. Smith was discharged on July 20, 1965, by reason of "physical disability EPTS," *i.e.* existing prior to service. Appx165. His separation examination noted hereditary retinal degeneration, with 20/300 vision in the right eye and 20/400 in the left eye, corrected to 20/40 bilaterally. Appx50; Appx170-171.

## II. Relevant Procedural History Leading Up To The Veterans Court Decision At Issue

Mr. Smith's history of seeking benefits for various eye conditions spans many decades and multiple remands, but as most relevant to this appeal, begins with an April 1996 claim for service connection for retinitis pigmentosa. That claim resulted in an April 2012 VA examination conducted by Dr. Stewart M.

Wilson, an ophthalmologist, followed by his May 2012 opinion at issue in this appeal. Appx15; Appx115-117; *see also* Appx179.

In his May 2012 opinion, Dr. Wilson explained that "[r]etinitis pigmentosa is considered an inherited genetic trait and/or genetic defect present at the time of birth or essentially at conception. It is not an acquired trait; it is not caused by external factors." Appx115. He further explained that, although there is no document "delineating the signs and symptoms or a diagnosis of retinitis pigmentosa … that predates entry into the service," the "retinal pigmentary changes, reduced best visual acuity and a complete lack of color vision" observed in Mr. Smith's eye evaluation conducted twenty-two days after entering the service "do not develop suddenly." Appx116. As such, Dr. Wilson opined that it was a "virtual certainty" that these symptoms "preexisted entrance to the service." Appx116. Combined with "[l]ater eye examinations," "history of poor night vision," and his sister's medical history, Dr. Wilson concluded that "the evidence of record is sufficiently strong as to reasonably conclude that retinitis pigmentosa did exist prior to the service." Appx116; *see* Appx15-16; *see also* Appx179.

Dr. Wilson further opined that "[t]here is no evidence that any increase of the vision problem progressed while in the service." Appx117. Dr. Wilson explained that the difference between Mr. Smith's left eye results at entrance (20/50) and separation (20/40) were "so close as to be interchangeable" and

reflected "the slight variability of testing situations;" as such, Mr. Smith "entered the service with 20/40- vision in each eye and left the service with 20/40- vision in each eye." Appx116. Dr. Wilson further considered Mr. Smith's argument that his exposure to bright sunlight while stationed in Hawaii made his vision worse, but explained that studies "conducted to see if reducing light exposure in one eye might reduce the rate of progression … showed no retarding, slowing or saving effect." Appx116-117. Thus, Dr. Wilson opined that it was less likely than not that the retinitis pigmentosa increased in severity during service, observing, indeed, that although "retinitis pigmentosa is a progressive problem," Mr. Smith was "apparently not [in the service] long enough to demonstrate or document any progression." Appx116-117; *see* Appx16.

On September 11, 2018, the Board of Veterans' Appeals denied service connection for retinitis pigmentosa, finding that although "not noted at the time of service enlistment," it "clearly and unmistakably existed prior to service entry" and "clearly and unmistakably was not aggravated or permanently worsened by service or any event therein." Appx63. The board's first finding—that Mr. Smith's "retinitis pigmentosa clearly and unmistakably existed prior to service"—was affirmed by the Veterans Court in May 2020 and is not at issue in this appeal. *See* Appx16; Appx55. The second finding—that Mr. Smith's retinitis pigmentosa was not aggravated by service—was remanded to the board for further explanation.

On January 14, 2021, the board again denied service connection, finding that Mr. Smith's retinitis pigmentosa "clearly and unmistakably was not aggravated by service." Appx33. The board specifically addressed the fact that Dr. Wilson phrased his opinion as "less likely than not" and explained that its "review of the underlying nature of the opinion reveals that it also meets the higher clear and unmistakable evidence standard." Appx42.

The board highlighted in particular Dr. Wilson's conclusions "that the service treatment records indicated that [Mr. Smith's] visual acuity did not worsen during his short time in service"—he "entered service with 20/40 vision in each eye and left service with 20/40 vision in each eye"—"and that there was no medical basis to credit [Mr. Smith's] assertion that his sun exposure during service worsened his underlying visual disability" or "any other basis in the record to conclude that [his] pre-existing eye disability underwent any increase in severity during service." *Id.* The board further noted that there was no "medical opinion evidence tending to indicate that [Mr. Smith's] preexisting visual disability increased in severity during service," and found his lay statements about the state of his vision contradicted by the medical evidence and thus not credible. Appx43.

## III. The Veterans Court Decision At Issue

On April 20, 2023, in a single-judge decision, the Veterans Court affirmed

denial of service connection. Appx14-20.[1] "On de novo review," the Court "likewise conclude[d]" that Dr. Wilson's "opinion rises to the level of clear and unmistakable evidence of a lack of in-service aggravation because it is supported with a suitable medical explanation, extant medical knowledge, and discussion of the facts of record." Appx18. Like the board, the Veterans Court highlighted Dr. Wilson's evidence and opinion that "Mr. Smith's vision did not change during service," as well as the studies that undermined Mr. Smith's "contention that exposure to bright sunlight in Hawaii caused his vision to worsen." Appx18-19. The Veterans Court concluded that Dr. Wilson's opinion was "precisely the sort of well-reasoned and well-supported opinion that cannot be misinterpreted and misunderstood," and therefore, was "clear and unmistakable evidence that Mr. Smith's retinitis pigmentosa was not aggravated in service." Appx19.

The Veterans Court further addressed and expressly rejected Mr. Smith's argument that Dr. Wilson's opinion was impermissibly based on the *absence* of evidence. "Rather," the court held, "it is based on affirmative evidence—a comparison of vision tests at entrance and separation from service—that demonstrated that no change in visual acuity occurred during service." Appx19.

Finally, the Veterans Court was "not persuaded that Dr. Wilson's use of the

[1] The Veterans Court granted Mr. Smith's motion for reconsideration and withdrew its October 2022 decision. Appx14. Thus, the operative decision of the court is the April 20, 2023 decision.

'less likely than not' standard changes the essential character of his opinion." *Id.* "To the contrary," the court concluded that "regardless of the precise language he used, Dr. Wilson's opinion is sufficiently supported to rise to the level of clear and unmistakable evidence," holding that "when the opinion is read as a whole, Dr. Wilson's comparison of the entrance and separation examinations leaves no doubt that the veteran's visual acuity did not change in service." Appx19-20.

Judgment was entered on May 12, 2023, and this appeal followed. Appx21.

## SUMMARY OF THE ARGUMENT

This Court does not have jurisdiction over Mr. Smith's appeal. Mr. Smith attacks the validity and sufficiency of Dr. Wilson's opinion, but the question of whether evidence in a given case amounts (or does not amount) to "clear and unmistakable evidence" is one of application of law to the facts of the particular case, which this Court may not review. 38 U.S.C. § 7292(d)(2); *see Belcher v. West*, 214 F.3d 1335, 1338 (Fed. Cir. 2000); *Harris v. West*, 203 F.3d 1347, 1351 (Fed. Cir. 2000); *Johnson v. McDonough*, No. 2022-1198, 2023 U.S. App. Lexis 5373, at *11 (Fed. Cir. Mar. 7, 2023). The appeal should be dismissed.

## ARGUMENT

### I. Standard Of Review

The scope of this Court's review of Veterans Court decisions is narrow. The Court may review the validity of a decision on a rule of law or the validity or

interpretation of any statute or regulation relied on by the Veterans Court in making that decision. 38 U.S.C. § 7292(a). This Court may not, however, "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case," except to the extent that the appeal presents a constitutional issue. § 7292(d)(2).

## II. Mr. Smith's Arguments Lie Beyond This Court's Jurisdiction Because They Challenge The Application Of Settled Law To His Particular Facts

There is no dispute about the legal principles in this case. That is, there is no dispute that, because the board found that Mr. Smith's retinitis pigmentosa "was not noted at the time of service enlistment," Appx63, the presumption of soundness under 38 U.S.C. § 1111 applied. *See* Applnt. Br. 10. Accordingly, service connection could be denied only if the Secretary "show[ed] clear and unmistakable evidence of both a preexisting condition and a lack of in-service aggravation." *Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004). Mr. Smith does not dispute that the board and the Veterans Court applied this standard, *see* Appx65; Appx35; Appx17, nor does he dispute that it was the correct standard that should have been applied. *See* Applnt Br. 9 (quoting *Wagner*), *id.* at 10 (agreeing that the presumption of soundness can be rebutted with "clear and unmistakable evidence").

Mr. Smith also does not challenge the determination that the first prong of the presumption of soundness was rebutted, *viz.* that clear and unmistakable evidence demonstrated that Mr. Smith's retinitis pigmentosa existed prior to

service. The only thing Mr. Smith challenges on appeal is whether the particular evidence in this case—specifically the medical opinion of Dr. Wilson (and its underlying bases) relied on by the board and the Veterans Court—"constituted the required 'clear and unmistakable evidence' to rebut the second prong of the presumption of soundness." Applnt. Br. 7. He "asks that this Court undertake a non-deferential review of" the Veterans Court's determination that "there was 'clear and unmistakable evidence' that Mr. Smith's [retinitis pigmentosa] had not been aggravated during his period of active duty service" and sets out to "demonstrate that Dr. Wilson's opinion evidence was not," as the Veterans Court held, "clear and unmistakable evidence." *Id.*

Notwithstanding Mr. Smith's invocation of phrases like "legal determination" and "as a matter of law" in making his ask, his challenge presents a quintessential question of application of law to fact beyond the scope of this Court's jurisdiction. As this Court has repeatedly held—in this very context—"whether the evidence regarding [the veteran's] pre-existing condition rises to the level of 'clear and unmistakable evidence' is simply the application of the facts to the legal standard established by section 1111, an issue that we are without jurisdiction to consider." *Belcher*, 214 F.3d at 1338; *see*, *e.g.*, *Waltzer v. Nicholson*, 447 F.3d 1378, 1380 (Fed. Cir. 2006); *Harris*, 203 F.3d at 1351; *Johnson*, 2023 U.S. App. Lexis 5373, at *11.

The specifics of Mr. Smith's arguments only further confirm that this appeal is challenging the probative quality of Dr. Wilson's evidence in *this particular case*—raising "questions regarding the sufficiency in fact of the evidence"—not some generally-applicable legal principle that could potentially be within this Court's jurisdiction. *Waltzer*, 447 F.3d at 1380 (explaining the distinction); *cf. Kent v. Principi*, 389 F.3d 1380, 1383 (Fed. Cir. 2004); *see* Applnt. Br. 12 (arguing that "[a]n examination of Dr. Wilson's May 2012 opinion reveals that this evidence could be readily misinterpreted and misunderstood"); *id.* at 14 (same). Indeed, this Court has already held that section 1111 "says nothing about the kind of evidence that can be used to rebut the presumption" and there are "no absolute rule[s]." *Harris*, 203 F.3d at 1349, 1351. "All that the statute requires is that the evidence, whatever it may be, must lead, clearly and unmistakably, to the conclusion," in this case, of no aggravation. *Id.* at 1349.

Ultimately, Mr. Smith's argument appears to be that because the retinitis pigmentosa was not diagnosed before service—but was diagnosed upon discharge—"there had to have been an increase in its severity" in the interim, *i.e.* "during service." Applnt. Br. 14. This argument is beyond the purview of this Court and also wrong both in its premise and conclusion. If Mr. Smith's argument was correct, then the "presumption" of soundness in section 1111 would be converted into an absolute rule for conditions that were not expressly diagnosed

prior to service. But that would render the statutory directive setting forth the standard to rebut the *presumption* null—as this Court has previously held, "the statute cannot be interpreted in a way that would make the presumption of soundness irrebuttable." *See* § 1111; *Waltzer*, 447 F.3d at 1380 (explaining the holding of *Kent*, 389 F.3d at 1383).

Moreover, Mr. Smith conflates the existence of a diagnosis with the manifested symptoms of the disease, but as any patient living with an untreatable ailment will attest, it is not the instance of diagnosis that defines the severity of the disease. That is, Mr. Smith may not have been diagnosed with retinitis pigmentosa before joining the Army, but the evidence that Dr. Wilson, the board, and the Veterans Court relied on was that his actual visual acuity—as tested upon entry and just before discharge—did not change, *i.e.* did not get worse. Appx116-117; Appx42; Appx18-20.

His related argument that Dr. Wilson's opinion was solely "based upon an absence of evidence," and so "cannot, as a matter of law, … rebut[] the presumption of soundness," Applnt. Br. 13, similarly fails at both the premise and the conclusion. The Veterans Court already proceeded under *agreement* with Mr. Smith as a legal matter that "VA may not rely solely on the absence of evidence to rebut either prong of the presumption of soundness," Appx19, so that

legal proposition cannot be the basis of his appeal.[2]

But the Veterans Court disagreed with Mr. Smith as a factual matter, expressly holding that "Dr. Wilson's opinion is *not* based on a *lack* of medical evidence of aggravation" and "[r]ather, it is based on *affirmative* evidence—a comparison of vision tests at entrance and separation from service—that demonstrated no change in visual acuity occurred during service." Appx19 (emphasis added). The Court further observed that Dr. Wilson "discussed the character of retinitis pigmentosa and supported his negative aggravation conclusion with a suitable medical explanation regarding the course of that disease," and that he "also explained the significance of the 20/50 visual acuity test result and cited medical studies that supported his conclusion." Appx19.

In sum, the Veterans Court concluded that Dr. Wilson's opinion "r[o]se to the level of clear and unmistakable evidence of lack of aggravation" because it was

---

[2] Although the argument is therefore irrelevant to the disposition of this case, we note that Mr. Smith's citation in support thereof may be misleading. To be clear, his quote comes from the *Forshey* dissent, which purports to rely on the *Amin* decision, not the other way around. Applnt. Br. 13; *see Forshey v. Principi*, 284 F.3d 1335, 1363 (Fed. Cir. 2002) (Mayer, J., dissenting) (citing *Amin v. Merit Sys. Prot. Bd.,* 951 F.2d 1247, 1254 (Fed. Cir. 1991)). We further note that this Court previously rejected an argument that the presumption of service-connection in combat service, *see* 38 U.S.C. § 1154(b), "can be overcome only by positive medical evidence of non-aggravation," holding instead "that evidence of a prolonged period without medical complaint can be considered, along with other factors concerning the veteran's health and medical treatment during and after military service, as evidence of whether a pre-existing condition was aggravated by military service." *Maxson v. Gober*, 230 F.3d 1330, 1333 (Fed. Cir. 2000).

"supported with a suitable medical explanation, extant medical knowledge, and discussion of the facts of record,"—*not*, as Mr. Smith argues now, merely "an inference he drew based upon an absence of evidence." *Compare* Appx19, *with* Applnt. Br. 13. In any event, Mr. Smith's disagreement with the Veterans Court as to that assessment of the quality of the evidence in this record is precisely what this Court may not review.

Finally, Mr. Smith challenges Dr. Wilson's use of the "less likely as not" standard in his opinion rather than the "clear and unmistakable evidence" standard. Applnt. Br. 12-13. But that argument not only goes to the weight of the evidence—and so lies beyond the scope of this Court's review—it further conflates the role of medical experts and adjudicators. It was the *board's* responsibility to determine, in the first instance, as to whether the record as whole rebutted Mr. Smith's presumption of soundness; Dr. Wilson's responsibility was to provide an opinion and evidence for the board's consideration.[3] The board assessed the

[3] Indeed, although the board noted that there was no conflicting medical evidence in this case, Appx43, this Court has recognized that "VA may [even] weigh the probative value of conflicting expert reports when determining whether clear and unmistakable evidence exists to rebut the presumption of soundness." *Williams v. Snyder*, 678 F. App'x 994, 997 (Fed. Cir. 2017); *see also Nieves-Rodriguez v. Peake*, 22 Vet. App. 295, 302 (2008) ("Both VA medical examiners and private physicians offering medical opinions in veterans benefits cases are nothing more or less than expert witnesses."); *Floore v. Shinseki*, 26 Vet. App. 376, 381 (2013) (discussing the "distinctive responsibilities of medical examiners and rating officials").

totality of the record and found that "the underlying nature of [Dr. Wilson's] opinion reveals that it also meets the higher clear and unmistakable evidence standard." Appx42. Upon considering the substance of Dr. Wilson's analysis, the board "conclude[d] that the opinion undebatably indicates that the Veteran's pre-existing eye disability underwent no increase in severity during service and thus meets the higher standard of 'clear and unmistakable evidence' of a lack of aggravation of the underlying disability during service." Appx42-43.

So too, upon its *de novo* review, the Veterans Court held that when "read as a whole, Dr. Wilson's comparison of the entrance and separation examinations *leaves no doubt* that the veteran's visual acuity did not change in service." Appx19-20 (emphasis added). Accordingly, the court concluded that "Dr. Wilson's use of the 'less likely than not' standard" did not "change[] the essential character of his opinion" and "regardless of the precise language he used, Dr. Wilson's opinion is sufficiently supported to rise to the level of clear and unmistakable evidence of a lack of aggravation in service." Appx19-20.

At bottom, although Mr. Smith plainly disagrees with the Veterans Court's (and board's) assessment of Dr. Wilson's opinion, there is no rule of law preventing reliance on that opinion, and Mr. Smith's disagreement falls beyond the jurisdiction of this Court.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss this appeal, or alternatively, affirm the Veterans Court's decision.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

/s/ William J. Grimaldi
WILLIAM J. GRIMALDI
Assistant Director

/s/ Galina I. Fomenkova
GALINA I. FOMENKOVA
Trial Attorney
United States Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480 | Ben Franklin Station
Washington, DC 20044
(202) 514-5495
galina.fomenkova@usdoj.gov

*Attorneys for the Secretary*

OF COUNSEL

DEREK SCADDEN
Deputy Chief Counsel

JONATHAN KRISCH
Attorney-Advisor
Office of General Counsel
U.S. Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC 20420

December 22, 2023

# CERTIFICATE OF COMPLIANCE
# PURSUANT TO FED. R. APP. P. 32(g)(1)

This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1). The brief contains 3,417 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

December 22, 2023

/s/ Galina I. Fomenkova
GALINA I. FOMENKOVA

*Attorney for the Secretary*