# United States Court of Appeals for the Federal Circuit

---

**DANIEL R. SMITH,**
*Claimant-Appellant*

**v.**

**DOUGLAS A. COLLINS, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2023-2213

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 21-3246, Chief Judge Margaret C. Bartley.

---

Decided: March 10, 2025

---

KENNETH M. CARPENTER, Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BRIAN M. BOYNTON, WILLIAM JAMES GRIMALDI, PATRICIA M. MCCARTHY; JONATHAN KRISCH, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before LOURIE, REYNA, and TARANTO, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Daniel R. Smith, who is currently blind, underwent medical examinations upon entering military service in August 1964 and upon leaving in June 1965. Reports from both examinations noted that he had poor night and color vision and that his vision was correctable in both eyes. After his discharge from service, Mr. Smith filed several claims with the U.S. Department of Veterans Affairs or its predecessor Veterans Administration (VA for both), under 38 U.S.C. § 1110, seeking benefits for an asserted service-connected disability based on retinitis pigmentosa, an eye disease causing degeneration of the retina resulting in vision loss. An ophthalmologist examined Mr. Smith and opined that his retinitis pigmentosa preexisted his service and did not increase in severity during his service. After VA denied Mr. Smith's claim on that basis, the Board of Veterans' Appeals (Board) agreed, determining that the ophthalmologist's opinion constituted clear and unmistakable evidence rebutting the presumption that Mr. Smith was of sound health when he entered service, and the Court of Appeals for Veterans Claims (Veterans Court) affirmed. *Smith v. McDonough*, No. 21-3246, 2023 WL 3016311, at *1–4 (Vet. App. Apr. 20, 2023) (*2023 Decision*). Mr. Smith appeals. Given the statutory limits on our jurisdiction to review Veterans Court decisions, 38 U.S.C. § 7292, we dismiss Mr. Smith's appeal.

# I

## A

Two statutes frame the dispute about the benefits claim at issue, 38 U.S.C. §§ 1111 and 1153. Section 1111 states:

> For the purposes of section 1110 of this title, every veteran shall be taken to have been in sound

> condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

38 U.S.C. § 1111. Section 1153 applies if there is an increase in severity of a preexisting condition, stating:

> A preexisting injury or disease will be considered to have been aggravated by active military, naval, air, or space service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 1153. We have addressed those provisions in a number of decisions. *See*, *e.g.*, *Kent v. Principi*, 389 F.3d 1380, 1382–83 (Fed. Cir. 2004); *Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004).

B

Mr. Smith served on active duty from August 1964 to July 1965. *2023 Decision*, at *1. He underwent a medical examination on August 12, 1964—the day that he entered service—and the examining physician noted that Mr. Smith's vision was correctable by glasses to 20/40 or 20/50, but that Mr. Smith had poor night and color vision. Ten months later, on June 11, 1965, Mr. Smith underwent another medical examination, and the examiner noted abnormalities in Mr. Smith's eye condition attributable to bilateral retinal degeneration, while also noting that Mr. Smith's vision remained correctable to essentially the same

extent.[1] Mr. Smith requested discharge from military service on June 16, 1965. The Army's medical evaluation board reviewed Mr. Smith's medical examinations and recommended that he be separated from active duty, and Mr. Smith was discharged on July 20, 1965.

In 1966, Mr. Smith filed a claim seeking disability benefits for an eye condition, and when VA denied the claim, Mr. Smith did not appeal. *2023 Decision*, at *1; *see Smith v. Shinseki*, No. 08-1959, 2010 WL 2377052, at *1 (Vet. App. June 15, 2010) (*2010 Decision*). Mr. Smith sought to reopen his claim in 1973, but reopening was denied for want of new and material evidence since the 1966 denial. *2010 Decision*, at *1.

In 1996, Mr. Smith submitted evidence of bilateral retinitis pigmentosa to support his claim to disability benefits for service-connected blindness. *2010 Decision*, at *1; *2023 Decision*, at *1. But the relevant VA regional office again found that no new and material evidence had been submitted since the 1966 denial and declined to reopen his claim. *2010 Decision*, at *1; *2023 Decision*, at *1. Mr. Smith appealed, arguing that the regional office's 1966 denial contained clear and unmistakable error and that his evidence of retinitis pigmentosa was new and material. *2010 Decision*, at *1; *2023 Decision*, at *1. The Board rejected both arguments in 2008. *2010 Decision*, at *1.

---

[1] The report from the August 1964 examination noted correctability of the right eye to 20/40 and of the left eye to 20/50, whereas the report from the June 1965 examination noted correctability of both eyes to 20/40. The Board deemed that minor difference likely attributable to "the slight variability of testing situations." J.A. 39; *see also* J.A. 116. That factual finding is not subject to review here.

In 2010, however, the Veterans Court set aside the 2008 Board decision. *Id.* It ruled that the Board had incorrectly applied the relevant VA regulation when considering the clear-and-unmistakable-error issue, and it remanded the matter to the Board to reconsider the issue. *Id.*; *see also 2023 Decision*, at *1. The Veterans Court also remanded the matter to the Board to consider whether Mr. Smith's 1966, 1973, and 1996 claims constituted "separate claims in and of themselves rather than requests to reopen decided claims." *2010 Decision*, at *6; *see also 2023 Decision*, at *1.

In April 2011, the Board determined that Mr. Smith's 1996 submission constituted a new claim—distinct from Mr. Smith's previously denied 1966 claim—and the Board remanded the 1996 claim to the regional office for factual development, including through an examination by an ophthalmologist, and adjudication. *2023 Decision*, at *1. The resulting examination, which is important to the present appeal, took place on April 27, 2012, and was conducted by ophthalmologist Dr. Stewart M. Wilson. *Id.* at *1; J.A. 115.

In his report on the examination, Dr. Wilson said of Mr. Smith's medical history that Mr. Smith (a) "entered the service with best vision of 20/40- [in] each eye, no color vision, poor night vision, [and] retinal pigmentary changes," and (b) "left the service the same way some 10–11 months later." J.A. 103; *see also 2023 Decision*, at *1. Dr. Wilson also opined about two aspects of Mr. Smith's retinitis pigmentosa relevant here: first, whether it preexisted Mr. Smith's entry into service, and second, whether it increased in severity during Mr. Smith's service. *2023 Decision*, at *2. Regarding preexistence, Dr. Wilson explained that "[r]etinitis pigmentosa is considered an inherited genetic trait and/or genetic defect present at the time of birth or essentially at conception"—*i.e.*, "not an acquired trait" and "not caused by external factors." J.A. 115; *see also 2023 Decision*, at *2. Regarding increase in severity during service, Dr. Wilson determined that Mr. Smith's condition

"less likely [than] not increased in severity in the service" and that there was "no evidence of record that the severity increased" because Mr. Smith "entered the service with 20/40- vision in each eye and left the service with 20/40- vision in each eye." J.A. 116; *see also 2023 Decision*, at *2. And although Mr. Smith had argued that the sunlight he was exposed to while in service worsened his condition, Dr. Wilson explained that studies demonstrate that reducing exposure to sunlight does not slow the progression of retinitis pigmentosa, indicating that increased exposure to sunlight would not cause retinitis pigmentosa to progress more quickly. J.A. 116–17; *see also 2023 Decision*, at *2.

In November 2012, the VA regional office denied Mr. Smith's claim. *2023 Decision*, at *2. Mr. Smith appealed, and the Board, in September 2018, similarly denied Mr. Smith's claim. *Id.* The Board noted that the "presumption of soundness" applied to the retinitis pigmentosa condition because that condition was not noted when Mr. Smith entered service; but the Board found that the presumption was overcome by Dr. Wilson's opinion, which provided the "clear and unmistakable evidence" needed to show that the condition did preexist service and, also, did not increase in severity during service (so the section 1153 aggravation standard was inapplicable). J.A. 65; *see 2023 Decision*, at *2 (describing Board decision). Mr. Smith appealed, and in May 2020, the Veterans Court remanded the matter to the Board for it to address more fully why Dr. Wilson's opinion, which answered a question that used a "less likely than not" standard, met the higher standard of clear and unmistakable evidence. *2023 Decision*, at *2; *Smith v. Wilkie*, No. 19-0027, 2020 WL 2781844, at *5 (Vet. App. May 29, 2020).

In 2021, on remand from the 2020 Veterans Court decision, the Board again found that Mr. Smith's retinitis pigmentosa clearly and unmistakably preexisted service and was not aggravated by his military service. *2023 Decision*, at *2. The Board addressed the Veterans Court's concerns regarding the different standards:

> Given that the examiner concluded that the service treatment records indicated that [Mr. Smith's] visual acuity did not worsen during his short time in service and that there was no medical basis to credit [Mr. Smith's] assertion that his sun exposure during service worsened his underlying visual disability; and given that the examiner did not find any other basis in the record to conclude that [Mr. Smith's] pre-existing eye disability underwent any increase in severity during service, the Board concludes that the opinion undebatably indicates that [Mr. Smith's] pre-existing eye disability underwent no increase in severity during service and thus meets the higher standard of "clear and unmistakable evidence" of a lack of aggravation of the underlying disability during service.

J.A. 42–43.

Mr. Smith appealed the 2021 Board decision to the Veterans Court. He did not challenge the Board's finding that his condition preexisted his service, but he did challenge the Board's finding that his condition was not aggravated during service. *See Smith v. McDonough*, No. 21-3246, 2022 WL 16549466, at *1, *3 (Vet. App. Oct. 31, 2022) (*2022 Decision*). In October 2022, the Veterans Court affirmed the Board's 2021 decision, interpreting Mr. Smith's appeal as arguing that the Board "provided inadequate reasons or bases for finding that Dr. Wilson's May 2012 opinion meets the standard of clear and unmistakable evidence." *Id.* at *3. But Mr. Smith sought reconsideration, arguing that the Veterans Court misunderstood his appeal as a "reason or bases" argument rather than one seeking review of whether Dr. Wilson's opinion was legally sufficient as to clear and unmistakable evidence.

In April 2023, the Veterans Court withdrew its 2022 decision and issued a new decision affirming the 2021 Board decision. *2023 Decision*, at *1. The Veterans Court

described the Board as having "found that Dr. Wilson's May 2012 opinion constituted clear and unmistakable evidence that [Mr. Smith's] preexisting retinitis pigmentosa did not increase in severity during service," even though Dr. Wilson answered a question framed using a "less likely than not" standard, because "the evidence cited in and the rationale of the opinion met the higher standard of clear and unmistakable evidence." *Id.* at *3. The Veterans Court saw no basis for disturbing the Board's finding, reasoning that "the May 2012 opinion rises to the level of clear and unmistakable evidence of a lack of in-service aggravation" and citing to Dr. Wilson's explanation that Mr. Smith entered and left service with the same vision, that Mr. Smith was not in service long enough to experience the progressive effects of his retinitis pigmentosa, and that studies demonstrated that Mr. Smith's service-related exposure to sunlight would not have affected the progression of retinitis pigmentosa. *Id.* at *4.

Addressing Mr. Smith's argument that Dr. Wilson impermissibly relied on the absence of evidence, the Veterans Court explained that Dr. Wilson's opinion was "based on affirmative evidence—a comparison of vision tests at entrance and separation from service—that demonstrated that no change in visual acuity occurred during service." *Id.* And regarding Dr. Wilson's answer to a question framed using a "less likely than not" standard, the Veterans Court reasoned that such language did not "change[] the essential character of his opinion," which, when "read as a whole," "leaves no doubt" that Mr. Smith's vision did not change during service. *Id.*

The Veterans Court's decision became final on May 12, 2023, and Mr. Smith timely appealed.

## II

Our jurisdiction to review a decision of the Veterans Court and, thus, Mr. Smith's appeal, is "limited by statute." *Goodman v. Shulkin*, 870 F.3d 1383, 1385 (Fed. Cir. 2017);

*see generally* 38 U.S.C. § 7292. As relevant here, we have authority to review a Veterans Court decision "with respect to the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the decision." 38 U.S.C. § 7292(a) (omitting exception for reviewing schedule of ratings). We have authority to address "relevant questions of law" that come within the foregoing language, *id.* § 7292(d)(1), but when (as in the present matter) there is no constitutional issue presented, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case," *id.* § 7292(d)(2).

It is undisputed here that Mr. Smith is entitled to the Section 1111 presumption of soundness because his retinitis pigmentosa was not noted when he entered service. It is also undisputed here that there was clear and unmistakable evidence that the condition in fact preexisted Mr. Smith's service. What Mr. Smith challenges is the determination that VA rebutted the presumption of soundness in the second required respect—namely, showed by clear and unmistakable evidence that the condition did not increase in severity during service (and so was not aggravated by service under Section 1153). Mr. Smith makes two arguments in support of this challenge. We conclude that we lack jurisdiction to address those arguments.

## A

Mr. Smith argues that Dr. Wilson's 2012 opinion did not supply "clear and unmistakable" evidence, as required by Section 1111, because Dr. Wilson was asked whether it was "at least as likely as not that there was no increase in the severity" of Mr. Smith's retinitis pigmentosa in service, not whether there was "clear and unmistakable evidence" that Mr. Smith's retinitis pigmentosa did not increase in severity during service. *See* Smith Opening Br. at 12

(emphasis omitted). This contention lies outside our jurisdiction.

It is the Board, as finder of fact, that must assess whether the evidence before it was "clear and unmistakable" as required by Section 1111, and the Veterans Court reviews that finding. *See*, *e.g.*, *Joyce v. Nicholson*, 443 F.3d 845, 848 (Fed. Cir. 2006); *Wagner*, 370 F.3d at 1097; *Belcher v. West*, 214 F.3d 1335, 1337–38 (Fed. Cir. 2000); *Harris v. West*, 203 F.3d 1347, 1348–49 (Fed. Cir. 2000). Here, both the Board and the Veterans Court expressly applied the "clear and unmistakable evidence" standard to Dr. Wilson's opinion and determined the standard to be met. The Board characterized its finding as "undebatabl[e]" in light of Dr. Wilson's explanation that Mr. Smith's vision did not worsen during his service and that "there was no medical basis" for Mr. Smith's arguments regarding the effects of sunlight on retinitis pigmentosa. J.A. 42–43. The Veterans Court, affirming that finding, stated that Dr. Wilson's explanation was "precisely the sort of well-reasoned and well-supported opinion that cannot be misinterpreted and misunderstood"—even though Dr. Wilson provided this explanation in response to a question framed in "less likely than not" language. *2023 Decision*, at *4.

Mr. Smith's argument is nothing but a request that we disagree with the Board's and the Veterans Court's determination that Dr. Wilson's opinion sets forth the requisite clear and unmistakable evidence. We lack authority to review that determination. "[W]hether the evidence regarding [the veteran's] pre-existing condition rises to the level of 'clear and unmistakable evidence' is simply the application of the facts to the legal standard established by section 1111, an issue that we are without jurisdiction to consider." *Belcher*, 214 F.3d at 1338; *see also Waltzer v. Nicholson*, 447 F.3d 1378, 1380 (Fed. Cir. 2006) ("*Kent* does not stand for the proposition that questions regarding the sufficiency in fact of the evidence, which require

application of law to fact, are within the jurisdiction of this court.").

B

Mr. Smith's second argument is that Dr. Wilson's opinion impermissibly drew "an inference . . . based upon an absence of evidence," which Mr. Smith asserts "cannot, as a matter of law, rise to the level of 'clear and unmistakable evidence.'" Smith Opening Br. at 13. We also lack authority to decide the merits of this argument.

Mr. Smith's contention that Section 1111 precludes treating the absence of evidence as "clear and unmistakable evidence" is not like his first argument, just discussed. This second argument is an assertion of a proposition of law, not an assertion about either a factual matter or a matter of application of law to fact. *See Kent*, 389 F.3d at 1383 (exercising jurisdiction to decide the correctness of "a per se rule barring rebuttal of the presumption [of soundness] if an entrance examination indicates that a condition was tested and found not to exist upon entry into service" because that entrance examination would inherently be conflicting evidence). Nevertheless, framing a legal issue (concerning a rule of law or the validity of a statute or regulation or its interpretation) is not the only requirement that must be met to give us authority under 38 U.S.C. § 7292 to address an appeal like this (not involving a constitutional issue).

For us to address a legal question presented to us on appeal (here, whether Section 1111 precludes the absence of evidence from constituting "clear and unmistakable evidence"), a second precondition must be met. The Veterans Court must have made a determination on the legal issue presented to us by the appellant, either making a "decision" on a "rule of law" or "rel[ying] on" a challenged statute or regulation or its interpretation. 38 U.S.C. § 7292(a). Such a determination might be express or, instead, might be implicit in the sense that the Veterans Court's result might

be altered by adopting the legal position pressed by appellant to this court. *See Taylor v. McDonough*, 71 F.4th 909, 924–25 (Fed. Cir. 2023) (en banc); *Andrews v. Nicholson*, 421 F.3d 1278, 1283 (Fed. Cir. 2005); *Szemraj v. Principi*, 357 F.3d 1370, 1374–75 (Fed. Cir. 2004); *Morgan v. Principi*, 327 F.3d 1357, 1359–64 (Fed. Cir. 2003); *Forshey v. Principi*, 284 F.3d 1335, 1338 (Fed. Cir. 2002) (en banc), *superseded in part by statute*, Veterans Benefits Act of 2002, Pub. L. No. 107-330, 116 Stat. 2820, *as recognized in Morgan*, 327 F.3d at 1359–64.[2] Here, that requirement is not met.

The Veterans Court's decision cannot fairly be viewed as expressly or implicitly treating an absence of evidence as itself constituting clear and unmistakable evidence. The Veterans Court nowhere stated that Section 1111 allowed such treatment of evidence, and given what it did say, the Veterans Court did not implicitly allow such treatment either: Adoption of Mr. Smith's view that an absence of evidence is insufficient to rebut the Section 1111 presumption could not alter the Veterans Court's bottom-line ruling. The Veterans Court expressly ruled that "Dr. Wilson's opinion is not based on a lack of medical evidence of aggravation" but instead on "affirmative evidence . . . that demonstrated that no change in visual acuity occurred during service." *2023 Decision*, at *4. Nor does the Veterans Court's affirmance of the Board's decision implicitly deem an absence of evidence sufficient to rebut the Section 1111 presumption: The Board's decision itself did not rest on the absence of evidence, but rather on affirmative evidence of Mr. Smith's examinations pre- and post-service. J.A. 42.

---

[2] This jurisdictional requirement is distinct from such non-jurisdictional rules as those governing failure to present an argument to the tribunal whose decision is being reviewed. *See Morgan*, 327 F.3d at 1364; *Forshey*, 284 F.3d at 1353–58.

For these reasons, it is clear that the Veterans Court did not expressly or implicitly make a decision on the legal issue Mr. Smith presents in his appeal to us. We could not conclude otherwise without first disagreeing with the Veterans Court on the application of law to fact, which we may not do. *See* 38 U.S.C. § 7292(d)(2). We therefore lack jurisdiction to decide the validity of his legal contention here.

III

Because we are without jurisdiction to rule on either of the issues presented by Mr. Smith, we dismiss his appeal.

The parties shall bear their own costs.

**DISMISSED**